Elmer Lee **MILLER**, Appellant,

v.

**STATE of Oklahoma**, Appellee.

No. F–86–856.

Court of Criminal Appeals of Oklahoma.

Jan. 14, 1991.

Ordered Published April 10, 1991.

---

Gloyd L. McCoy, Deputy Appellate Public Defender, Norman, for appellant.

Robert H. Henry, Atty. Gen. and Lee S. McIntire, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

JOHNSON, Judge:

ELMER LEE MILLER, appellant, was tried by jury for the crimes of First Degree Burglary, in violation of 21 O.S.1981, § 1431 (Count I), First Degree Rape, in violation of 21 O.S.Supp.1984, §§ 1111 and 1114, (Count II), and Oral Sodomy in violation of 21 O.S.1981, §§ 886 and 888, (Counts III and IV) in Case No. CRF–85–5652 in the District Court of Oklahoma County. Appellant was represented by counsel. The jury returned verdicts of guilty on all four counts. In accordance with the jury's verdict, the trial court sentenced appellant to ten (10) years imprisonment for Count I, twenty (20) years imprisonment for Count II, and ten (10) years imprisonment for Counts III and IV. The sentences in Counts III and IV were ordered to run concurrently. From this Judgment and Sentence, appellant appeals.

On July 28, 1985, at approximately 1:13 a.m., C.G. was awakened in her apartment by a man straddling her on her bed. The man ordered her to do everything he told her to do or he would kill her. The man proceeded to have sexual intercourse with C.G. and later performed oral sodomy on her and then had her orally sodomize him. After the man had left her house, C.G. called a friend and the police were later notified. Later, at the police station, C.G. identified appellant in a photo lineup as the man who had attacked her in her apartment.

In his first assignment of error, appellant asserts that the trial court erred in failing to grant a continuance so that crucial hair evidence could be evaluated by his expert witness.

In the present case, appellant was charged in November of 1985. The preliminary hearing was held in January 1986. On April 4, 1986, the State obtained a court order to get body samples from appellant, and on April 8, 1986, appellant submitted to the taking of his blood, saliva, scalp and pubic hair samples from his person. As of this time, trial had been scheduled for April 21, 1986. The trial was continued, however, until May 19, 1986, upon motion of the appellant due to the failure of the State to furnish the appellant with any of the hair or semen samples. Finally, on April 18, 1986, Oklahoma County District Judge

Charles Owens issued an order requiring that specimen forensic evidence be delivered to appellant's expert witnesses on or before April 28, 1986.

Joyce Gilchrist, a forensic chemist for the Oklahoma City Police Department, shipped the serological evidence to the appellant's expert on approximately April 29, 1986. However, due to illness and the priority of other cases, Ms. Gilchrist was unable to complete her examination of the hair evidence until May 7, 1986. The hair evidence was finally mailed to appellant's expert on May 9, 1986, arriving on the afternoon of May 12, 1986.

On May 15, 1986, appellant filed a Motion for Continuance, asserting that his hair expert had been unable to conduct an appropriate study of the hair evidence. At the hearing on the Motion, on May 16, 1986, defense counsel made the following argument:

> In conclusion, I would submit to the Court that the testimony of Max Courtney [appellant's expert] is essential to explain to the jury the technique for testing hairs, the inconclusiveness of hair samples generally, and to explain to the jury the significance of the statement by the forensic chemist, Joyce Gilchrist, that the one scalp hair and the additional four pubic hairs taken from the mattress cover are not consistent either with [appellant] or with [the victim]. (C.Tr. 5)

During further argument, defense counsel stated:

> ... [I]n response to what the Court said regarding what possible additional need we might have for Max Courtney.
>
> Today, having for the first time received the forensic report of Joyce Gilchrist, I note that there was discovered, among other types of hairs, to be a beard hair.
>
> And it occurs to me that that type of evidence could be essential if Mr. Courtney could compare a beard hair of the Defendant with the known beard hair found and testify that it was not the same hair. I could see that that would

be essential as an additional item of evidence, exculpatory in nature, in addition to the obvious that's already been pointed out by the Court. (C.Tr. 13–14)

The Honorable Judge Jack Parr denied the appellant's Motion finding that appellant could present the information he wanted through cross-examination of Joyce Gilchrist, without going to the expense of his own expert witness.

Appellant asserts that the failure of his expert to have adequate time to evaluate the hair evidence haunted him throughout the trial. As an example, he cites the opening argument of the prosecuting attorney, wherein he stated:

> And probably, ladies and gentlemen, from the most important fact you will learn is in turn, a microscopic hair comparison analysis of the hairs in this case that Joyce Gilchrist noticed a very unique characteristic about the pubic hairs from this crime scene and also the pubic hairs from this defendant. She notes a very unique characteristics which she will tell you about in detail that she has never seen in all of her experience and training as a chemist in the pubic hairs of any caucasian ... (Tr. 17)

Appellant argues that that was the first he had ever heard of this "unique characteristics" as the forensic report given to him prior to trial made no such mention of a unique trait to the hairs.

We find the case of *McCarty v. State*, 765 P.2d 1215 (Okl.Cr.1988), to be controlling of this case. In *McCarty*, a case involving the Oklahoma County District Attorney's Office and Ms. Gilchrist, this Court found that the State's tardiness in disclosing the hair evidence and forensic report resulted in the defense expert being unable to adequately examine the physical evidence. *Id.* at 1217. We stated that an accused is entitled to pretrial examination of physical evidence and technical reports, and that the right would be rendered meaningless unless an accused is afforded a fair and adequate opportunity to make a competent independent pretrial examination. *Id.*

■ In the present case, it was approximately two weeks after the deadline ordered by Judge Owens that Ms. Gilchrist

mailed the hair evidence to the appellant's expert. Thus, appellant's expert received the evidence six and one-half days before trial began. What is even more disturbing than the State's tardiness in providing the evidence to the appellant is the fact that Ms. Gilchrist's pretrial forensic report made absolutely no mention of her finding of a "unique characteristic" concerning appellant's pubic hairs. However, in his opening argument, the prosecutor alerted the jury to the State's expert's finding of the "unique characteristic." Clearly, this significant omission in Ms. Gilchrist's report, whether intentional or inadvertent, coupled with the State's extreme tardiness in complying with the discovery order, resulted in trial by ambush on a very critical piece of evidence. *See McCarty,* 765 P.2d at 1218.

■ One of the reasons given for not granting the continuance was due to the fact the victim was on active duty and the trial would have to be put off until September, 1986, if granted. The courts, State and defense all have plenty to do, but one person in the chain is the defendant who is to have a fair trial, if not a perfect one. *Jones v. State,* 610 P.2d 818 (Okl.Cr.1980). Counsel must have assistance to prepare a defense and to cross-examine the State's expert. The appellant must have an attorney that is "effective". This requires time to prepare, time to consult with experts and time to be ready for effective cross-examination of the State's expert. *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); *United States v. Durant,* 545 F.2d 823 (2d Cir.1976). We find that the trial court's denial of appellant's Motion for Continuance was a denial of appellant's right to due process and fundamental fairness guaranteed by the Fourteenth Amendment and Article II, Section 20 of the Oklahoma Constitution.

This case is REVERSED and REMANDED for a new trial.

PARKS, P.J., LANE, V.P.J., and BRETT and LUMPKIN, JJ., concur.