**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 25 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JOYCE A. GILCHRIST,

      Plaintiff-Appellee,

v.

BILL CITTY, individually and in his official capacity as Assistant Police Chief; KEN MCDONALD and JOHNNY KUHLMAN, both individually and in their official capacities as Majors with the Oklahoma City Police Department; RICHARD DAWES, individually and in his official capacity as Chemist Supervisor with the Oklahoma City Police Department; MATTHEW SCOTT, individually and in his official capacity as Chemist with the Oklahoma City Police Department; JAMES D. COUCH, individually,

      Defendants-Appellants,

and

CITY OF OKLAHOMA CITY, a municipal corporation; M.T. BERRY, individually and in his official capacity as Chief of Police; ROBERT A. JONES, individually and in his official capacity as Deputy Chief of Police; GAROLD SPENCER, individually and in his official capacity as Major with the Oklahoma

Nos. 02-6352 & 02-6353
(D.C. No. CIV-02-538-R)
(W.D. Okla.)

City Police Department; BYRON BOSHELL, individually and in his official capacity as Captain with the Oklahoma City Police Department; LAURA SCHILE, individually and in her official capacity as Forensic Chemist with the Oklahoma City Police Department,

Defendants.

---

**ORDER AND JUDGMENT** [*]

---

Before **BRISCOE** , **PORFILIO** , and **ANDERSON** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' requests for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

In these companioned cases, defendants Bill Citty, Ken McDonald, Johnny Kuhlman, Richard Dawes, Matthew Scott, and James D. Couch appeal from the district court's order denying their motions to dismiss plaintiff's 42 U.S.C. § 1983 wrongful discharge suit on the grounds that they are protected by absolute and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

qualified immunity.  We have jurisdiction over these interlocutory appeals: "[T]he denial of a motion to dismiss based on qualified or absolute immunity is immediately appealable under the *Cohen* [*v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949)] collateral order doctrine."  *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 515 (10th Cir. 1998) (footnote omitted).  We determine that, at the Rule 12(b)(6) stage of this litigation, defendants have not demonstrated their entitlement to the protection of immunity.  We affirm.

## STANDARD AND SCOPE OF REVIEW

We review de novo a district court's ruling on a motion to dismiss for failure to state a claim upon which relief may be granted.  *Dill v. City of Edmond*, 155 F.3d 1193, 1201 (10th Cir. 1998).  Our "'function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'"  *Sutton v. Utah State Sch. for Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999) (quoting *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)).  We "accept[] as true all well-pleaded allegations in the complaint and constru[e] them in a manner favorable to the non-moving party."  *Moore v. Gunnison Valley Hosp.*, 310 F.3d 1315, 1316 (10th Cir. 2002).

We generally "look only at the four corners of the complaint" because we are "reviewing the sufficiency of the complaint alone."  *Moffett v. Halliburton*

*Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002). There are exceptions to this practice, however. As relevant to the instant Rule 12(b)(6) analysis, we may take judicial notice of the existence of the opinions of other courts but not the truth of the facts recited therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001); *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

The brief summary provided below, therefore, is compiled primarily from plaintiff's complaint. It also includes information from published state and federal court cases–not for the truth of the factual findings relating to Ms. Gilchrist, but for the fact that defendants were aware of their existence. The summary does not rely on factual allegations made only by defendants or on documents submitted with the motions to dismiss. Specifically, it does not incorporate defendants' characterization of the review board report recommending Gilchrist's firing.[1]

---

[1] Although defendants did not attach the Review Board report to their motions to dismiss, they attached numerous other documents which Gilchrist had attached to an earlier complaint. *See* Aplt. App., 91-103. These documents have no place in our Rule 12(b)(6) review.

Defendants state that they "offered to produce [the report] but were afraid to attach it for fear it would turn [their] Motion to Dismiss into a Motion for Summary Judgment (Fed.R.Civ.P., Rule 12b) defeating their right not to be subjected to the burdens of discovery, *etc.*" Aplt. Br. at 9, n.8; *see also id.* at 23 ("[T]heir [sic] exists an argument that by filing a Motion for Summary Judgment, Appellants would give up their right not to face the burdens of discovery."). They also express a concern that the district court would not have given the

(continued...)

-4-

# FACTUAL SUMMARY

Joyce Gilchrist was an Oklahoma City Police Department forensic chemist from 1980 through September 2001. Her job required her to conduct chemical tests on physical evidence and provide expert testimony on the results of the tests. For a number of years, her police-department supervisors and prosecutors believed her to be an excellent employee. Apparently, they considered her expert testimony to be especially effective. Problems with Gilchrist's efforts on behalf of the prosecution were simmering, however. In several cases, the Oklahoma Court of Criminal Appeals determined that Gilchrist violated discovery orders by inexcusably delaying a forensic examination and providing reports to the defense in an untimely manner. *Miller v. State*, 809 P.2d 1317, 1319-20 (Okla. Crim. App.

---

[1](...continued)
authorization to file a second motion for summary judgment required under the Local Rules for the United States District Court of Oklahoma. *Id.* at 23.

The Review Board report, however, could have fallen into a recognized exception to the general rule limiting this court's review to the complaint. "[I]f a plaintiff does not incorporate by reference or attach a document to its complaint, [and] the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *Id.* at 1385. The Review Board report is certainly central to Gilchrist's claim. It is not part of the record, however, and defendants' statements concerning the report cannot be considered.

1991); *Pierce v. State*, 786 P.2d 1255, 1261 (Okla. Crim. App. 1990); *McCarty v. State*, 765 P.2d 1215, 1217 (Okla. Crim. App. 1988).

In 1998, Gilchrist reported to the police chief that she heard that one of the defendants, Major Garold Spencer, had sexually harassed a female vendor. She alleges that Spencer and his allies on the police force were outraged, even though he was not disciplined in connection with the charge.

Gilchrist's expert testimony was even more seriously called into question in September 1999 in the federal district court's decision in *Mitchell v. Ward*, 150 F. Supp. 2d 1194, 1220-29 (W.D. Okla. 1999), *aff'd in part and rev'd in part by Mitchell v. Gibson*, 262 F.3d 1036 (10th Cir. 2001). This court granted habeas relief to Mitchell based in part upon the district court's finding that Gilchrist's testimony was false or misleading. *Mitchell v. Gibson*, 262 F.3d at 1063-66. The police department responded to the district court's publication of the *Mitchell* case by prohibiting Gilchrist from DNA testing, giving her menial assignments, and ordering her to move out of her office. They also arranged for an FBI agent to conduct a re-analysis of the forensic evidence and a review of Gilchrist's trial testimony in eight cases.

Gilchrist was advised of misconduct charges: problems with her expert testimony and also managerial shortcomings. She filed a grievance objecting to the charges. Defendant M.T. Berry, the chief of police, named defendants Bill

Citty (assistant police chief), Richard Dawes (a police-department chemist supervisor), Johnny Kuhlman (a police-department major), Ken McDonald (a police-department major), and Matthew Scott (a police-department chemist) to the Oklahoma City Police Department Review Board responsible for conducting proceedings in Gilchrist's grievance.

The Review Board held a multi-day hearing in August 2001. With the assistance of counsel, Gilchrist testified, presented a witness, and cross-examined police-department witnesses. The Board then issued a report recommending the termination of Gilchrist's employment, primarily for her expert testimony in court proceedings in seven cases, decided from 1984 to 1992. On September 25, 2001, Berry followed the Board's recommendation and discharged Gilchrist. Her termination was approved by defendant Couch, the city manager.

She filed this § 1983 lawsuit, naming as defendants Oklahoma City, the city manager, the chief of police, the deputy chief of police, her former supervisor, Major Spencer, the police-department chemist who attempted to duplicate Gilchrist's analyses, and members of the Review Board. Gilchrist's claims included: First-Amendment retaliation for filing charges against Spencer,

First-Amendment retaliation for providing truthful expert testimony, conspiracy to retaliate, defamation, and deprivation of substantive and procedural due process. [2] Alleging that defendants retaliated against her and terminated her employment due to her exercise of her First-Amendment right to testify in court and also due to her reporting of Major Spencer's alleged sexual harassment. She explicitly alleges that her testimony was consistently truthful and accurate and that defendants orchestrated false accusations of mishandling, withholding, and misrepresenting evidence.

The members of the Review Board and Defendant Couch moved to dismiss, arguing that they were entitled to judicial or quasi-judicial absolute immunity and qualified immunity. The district court denied defendants' motion. In two separate orders, one addressing the Review Board defendants' motion and one addressing defendant Couch's motion, the court concluded that, at the Rule 12(b)(6) stage of the proceedings, they had not demonstrated entitlement to either absolute or qualified immunity. This appeal followed.

---

[2]    The district court dismissed Gilchrist's procedural due process claim against the Review Board defendants. That dismissal is not an issue in this interlocutory appeal.

**DISCUSSION**

**Absolute immunity**

Defendants argue that they are entitled to absolute immunity from damages for their termination decision, under the rationale of *Butz v. Economou*, 438 U.S. 478 (1978). [3] In *Butz*, the Supreme Court held that agency officials who perform quasi-judicial functions are entitled to absolute immunity from suit. *Id.* at 514. Later, in *Cleavinger v. Saxner*, 474 U.S. 193 (1985), the Court extended absolute immunity to federal hearing examiners and administrative law judges. It refused, however, to accord absolute immunity to employees of the Bureau of Prisons temporarily diverted from their usual duties to serve on a prison discipline committee, *id.* at 203-04, because they "are under obvious pressure to resolve a disciplinary dispute in favor of the institution and their fellow employee," *id.* at 204. Absolute immunity is recognized only sparingly, and officials seeking the immunity bear the burden of showing that their actions are entitled to such absolute protection. *Burns v. Reed*, 500 U.S. 478, 486-87 (1991). There is a presumption that qualified immunity is generally sufficient to protect government officials. *Id*.

---

[3] Defendant Citty, the chairman of the Review Board, also asserts that he is entitled to absolute immunity for his denial of one of Gilchrist's pre-termination requests for documents. The analysis of this issue is identical to that of the major issue relating to all defendants.

A court must engage in a functional analysis of an official's conduct to determine whether it is quasi-judicial in nature, and whether absolute immunity attaches. *Id.* at 512. Following and applying *Cleavinger*, the Tenth Circuit has identified six factors, among others

> as characteristic of the judicial process and to be considered in determining absolute as contrasted from qualified immunity: (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Moore*, 310 F.3d at 1317.

In this case, the limited record on appeal does not permit a reasoned balancing of the *Moore* factors. For instance, it contains insufficient information concerning the importance of precedent, the insulation of Review Board members from political influence, the correctability of error on agency review, or the role of Defendant Couch. The district court's determination that defendants failed to show entitlement to absolute immunity is therefore sustainable.

**Qualified immunity**

As an alternative basis for dismissal, defendants argue that the doctrine of qualified immunity protects them from liability to Gilchrist.

> Under the doctrine of qualified immunity, government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate

-10-

clearly established statutory or constitutional rights of which a reasonable person would have known. The key to the qualified immunity inquiry is the objective reasonableness of the official's conduct in light of the legal rules that were clearly established at the time the action was taken.

*Tonkovich*, 159 F.3d at 516 (quotations, citations, and parentheticals omitted). "Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law." *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001). "If the answer is yes, then we determine whether the right was clearly established such that a reasonable person in the defendant's position would have known that his or her conduct violated that right." *Tonkovich*, 159 F.3d at 516 (quotations, citations, and parentheticals omitted).

The issue here is whether Gilchrist's claim that she was discharged for giving truthful opinion testimony satisfies both prongs of the qualified-immunity test. It is well-established that "truthful testimony is protected by the First Amendment and that a government employee may not be fired or subjected to other adverse action as the result of such testimony." *Worrell v. Henry*, 219 F.3d 1197, 1204-05 (10th Cir. 2000). "[Q]ualified immunity is not available to a defendant who knowingly punishes an employee for uttering truthful testimony on matters of public concern." *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1505 (7th Cir. 1994).

-11-

Defendants point out, however, that if an employee's "supervisors reasonably believed, after an adequate investigation, that her testimony was false, even if it actually was true, they could punish her on the basis of their investigation." *Id.* at 1506 (citing *Waters v. Churchill*, 511 U.S. 661, 678 (1994) (plurality opinion)). Defendants claim that, at the very least, the published cases criticizing Gilchrist's performance provided a reasonable basis for their belief that Gilchrist's testimony was false.

The complaint, however, alleges that defendants knew that certain portions of Gilchrist's testimony were corroborated by a later analysis, that DNA technology did not exist at the time of her analysis, that her trial testimony was misrepresented, and that the FBI agent acknowledged that certain of her analyses were highly subjective. We agree with the district court that Gilchrist's allegations adequately raise an inference that defendants did not reasonably believe her testimony to be false. Confining our analysis, as we must, to Gilchrist's allegations and judicially noticed facts, we determine that she has adequately stated a violation of her First Amendment right to engage in protected speech. Further, this right was clearly established at the time of her discharge. As a consequence, the district court correctly denied defendants' Rule 12(b)(6) motion.

## CONCLUSION

Although we make no comment on the ultimate merit of Gilchrist's case, defendants have not shown entitlement to absolute or qualified immunity at this point in the litigation. The district court's denial of defendants' motions to dismiss is AFFIRMED. The defendants' motion to file a supplemental appendix is DENIED.

Entered for the Court

John C. Porfilio
Circuit Judge